UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MOHIT M. AND HIMANSHU H.[1],

Petitioners,

v.

CHRISTOPHER CHESTNUT, et al.,

Respondents.

No. 1:26-cv-00241-TLN-SCR

**ORDER**

This matter is before the Court on Petitioners Mohit M. and Himanshu H.'s ("Petitioners") Motion for Temporary Restraining Order ("TRO").  (ECF No. 5.)  For the reasons set forth below, Petitioners' Motion is GRANTED and Respondents are ORDERED TO SHOW CAUSE why a preliminary injunction should not issue.

## I.    FACTUAL BACKGROUND

Petitioners are citizens of India who fled their country due to religious persecution and they now seek asylum in the United States.  (*See* ECF No. 5-1 at 2.)

---

[1]    As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioners' full names, using only their first name and last initial, to protect sensitive personal information.  *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.  The Clerk of Court is directed to update the docket to reflect this change accordingly.

1

Petitioner Mohit M. entered the United States around May 28, 2023, without inspection and he approached immigration officials to claim asylum. (*Id.* at 2–3.)  Immigration officials detained Petitioner Mohit M. for approximately one day. (*Id.* at 3.)  He was released on May 29, 2023, on conditional parole, after a determination that he was neither a flight risk nor danger to the community. (*Id.*)  Petitioner Mohit M. was provided with notice that stated he was released on his own recognizance, pursuant to 8 U.S.C. § 1226 and 8 C.F.R. Part 236, "pending a final administrative determination in [his] case." (ECF No. 1 at 5.)  Petitioner Mohit M.'s immigration case is still pending.

Petitioner Himanshu H. entered the United States around June 2, 2024, without inspection and he also approached immigration officials to claim asylum. (ECF No. 5-1 at 3.)  Immigration officials detained Petitioner Himanshu H. for approximately one day. (*Id.*)  He was released on June 3, 2024, on conditional parole, after a determination that he was neither a flight risk nor danger to the community. (*Id.*)  Petitioner Himanshu H. was provided with notice that stated he was released on his own recognizance, pursuant to 8 U.S.C. § 1226 and 8 C.F.R. Part 236, "pending a final administrative determination in [his] case." (ECF No. 1 at 6.)  Petitioner Himanshu H.'s immigration case is still pending.

During their years of parole, Petitioners state they developed community ties in the United States, obtained work authorization and supported their families, obeyed all laws, and complied with all conditions of their release. (ECF Nos. 1 at 5–7; 5-1 at 3.)  Petitioners attended all of their court hearings, timely filed their applications for asylum, attended their biometrics appointments, and have never been arrested. (ECF Nos. 1 at 5–7; 5-1 at 3.)

Nevertheless, on December 10, 2025, Petitioners were stopped by U.S. Department of Homeland Security ("DHS") officials. (ECF No. 5-1 at 3.)  The DHS officers inquired about their immigration status, and when Petitioners disclosed they were asylum applicants and showed officers their identification, the officers arrested them. (ECF No. 1 at 7.)  Petitioners contend they were arrested despite following all laws and despite showing officers valid work permits and driver's licenses. (*Id.*)  Petitioners allege DHS has not identified any changed circumstances to justify cancelling Petitioners' parole. (ECF No. 1 at 3–4.)  Petitioners were detained without any

2

notice or an opportunity to be heard.  (ECF No. 5-1 at 3.)

Petitioners have now been detained for over a month without a hearing.  Petitioners jointly challenge the lawfulness of their civil detention and seek immediate release.  (*See* ECF Nos. 1, 5.)

**II.    STANDARD OF LAW**

For a TRO, courts consider whether a petitioner has established "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Petitioner must "make a showing on all four prongs" of the *Winter* test.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

In evaluating a petitioner's motion, a district court may weigh petitioner's showings on the *Winter* elements using a sliding-scale approach.  *Id.*  A stronger showing on the balance of the hardships may support issuing a TRO even where the petitioner shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Id.*  Simply put, a petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor in order to succeed in a request for a TRO. *Id.* at 1134–35.

**III.    ANALYSIS**[2]

The Court considers each of the *Winter* elements with respect to Petitioners' motion.

**A.    Likelihood of Success on the Merits**

Petitioners have established a likelihood of success on their claims that their detentions violate the Immigration and Nationality Act ("INA") and the Fifth Amendment Due Process

---

[2]    The Court finds Petitioners have sufficiently met the requirements for issuing a TRO without notice.  *See* Fed. R. Civ. P. 65(b).  Petitioners notified Respondents via email that he would be filing the motion.  (*See* ECF Nos. 5-1 at 2; 5-2.)  *See R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2617255, at *3 (E.D. Cal. Sept. 9, 2025) (similarly finding requirements for TRO were met without notice); *Pinchi v. Noem*, No. 25-cv-05632-RML, 2025 WL 1853763, at *4 (N.D. Cal. July 4, 2025) (same).

Clause.[3]  The Court discusses each claim in turn.

*i.  Violation of the INA*

Under the INA, 8 U.S.C. § 1226(a) ("§ 1226(a)") "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal."  *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022).  Section 1226(a) provides the Government broad discretion whether to release or detain the individual and it provides several layers of review for an initial custody determination.  *Id.*  It also confers "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change."  *Id.* at 1202.

Conversely, 8 U.S.C. § 1225(b) ("§ 1225(b)") mandates detention during removal proceedings for applicants for admission and does not provide for a bond hearing.

Until the U.S. Department of Homeland Security ("DHS") changed its policy in July 2025 ("DHS's July Policy"), the Government consistently applied § 1226(a), not § 1225(b), to noncitizens residing in the United States who were detained by immigration authorities and subject to removal.

Courts nationwide, including this one, have overwhelmingly rejected the Government's new legal position and have found DHS's July Policy unlawful.  *See Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (explaining this Court's reasons for taking this position and collecting cases); *see also Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal. Dec. 18, 2025) (issuing vacatur of unlawful DHS July Policy for a nationwide certified class).

Petitioners assert they are unlawfully detained under § 1225(b)(2) when § 1226(a) should govern.  (ECF No. 1 at 36.)  This Court agrees.  Section 1225(b)(2) applies only to "applicants for admission" "seeking admission" — a category that does not include noncitizens like Petitioners

---

[3]  Petitioners also assert a violation of the Administrative Procedure Act (ECF No. 1), however, the Court need not address cumulative violations where relief is warranted on Petitioners' other claims.

who have already entered the United States and are residing here at the time of their re-detention. *See Morales-Flores*, 2025 WL 3552841, at \*3. This Court has made its position on this statutory question clear. *Id.* Absent new argument, case law, or distinguishable facts, this Court will not reconsider its position.

Thus, Petitioners are not applicants for admission subject to mandatory detention under § 1225(b)(2). Petitioners are instead subject to § 1226(a) and are entitled to the process that statute requires, including a bond hearing at a minimum. Yet, Respondents have not provided any such hearing to either Petitioner in over a month of detention. Accordingly, Petitioners are likely to succeed on the merits of their claim that Respondents have violated the INA and improperly subjected them to mandatory detention without a hearing.

### ii.  Violation of Procedural Due Process

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

### a)  Liberty Interest

As for the first step, the Court finds Petitioners have established protectable liberty interests. *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at \*8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause"). "[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon

which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original). "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

Here, Petitioners each gained a liberty interest in their continued freedom when they were granted their conditional parole pending final determinations in their immigration cases. (ECF No. 1 at 5–6.) Under *Morrisey*, their releases implied promises that they would not be re-detained, during the pendency of their immigration proceedings, if they abided by the terms of their releases. During that time, Petitioners complied with all the conditions of their release. Petitioners state they obeyed all laws, attended all of their court hearings, timely filed their applications for asylum, attended their biometrics appointments, and have never been arrested. (ECF Nos. 1 at 5–7; 5-1 at 3.) As this Court has found previously, along with many other courts in this district when confronted with similar circumstances, Petitioners have clear interests in their continued freedom as they await the outcome of their immigration proceedings. *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

*b)*    *Procedures Required*

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including

6

the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As set forth below, the Court finds Petitioners have established their due process rights were likely violated.

First, Petitioners have substantial private interests in remaining free from detention. During their periods of release, Petitioners have built lives, obtained gainful employment to support their families, and fostered extensive community ties. (ECF Nos. 1 at 5–7; 5-1 at 3.) Despite that, Petitioners have now been detained for over a month without any opportunity to be heard. (ECF No. 5-1 at 3.) Accordingly, this factor weighs in favor of finding Petitioners' private interests have been impacted by their detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioners have not received any hearings, either pre- or post-detention. Thus, the Court finds there is a serious likelihood Petitioners could be erroneously deprived of their liberty interests. Without any procedural safeguards to determine whether their detention was justifiable, the probative value of additional procedural safeguards is high. *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioners with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994; *see also R.D.T.M.*, 2025 WL 2617255, at *4 ("Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the community.") (cleaned up).

Here, Petitioners' asylum applications are pending and neither have a final order of removal. Additionally, before Petitioners were released on parole, immigration authorities found they were not a danger to the community nor a flight risk. (ECF No. 5-1 at 3.) This finding has

7

only been strengthened by Petitioners' conduct over the period of their releases as they have complied with all laws, all conditions of their release, and they have no criminal history. Therefore, on this record, the Court cannot find any legitimate interest for Respondents to detain Petitioners.

Moreover, the cost and time of procedural safeguards are minimal here. Notice and custody determination hearings are routine processes for Respondents. Indeed, these are the very processes owed to Petitioners under § 1226(a). Any delay in detention (if justified) for the time to provide notice and a hearing would be minimal. It would also be less of a fiscal and administrative burden for the Government to return Petitioners home to await a determination on their immigration proceedings than to continue to detain them. *See Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering.").

The Court finds that, under these circumstances, Respondents are required to provide notice and a pre-deprivation hearing. The United States Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). The Court describes post-deprivation remedies as the "special case" where those are "the only remedies the State could be expected to provide." *Id.* at 129. Here — where Petitioners have complied with the conditions of their parole, have been previously determined not to be a flight risk or a danger, have never been arrested, and removal is not reasonably foreseeable — the Court finds pre-deprivation notice and a hearing are possible and valuable to preventing erroneous deprivation of liberty.

On balance, this Court finds the *Mathews* factors demonstrate Petitioners were entitled to pre-deprivation notice and hearing to determine whether detention was warranted. Respondents have not provided either. Nor did they provide post-deprivation hearings. Accordingly, with respect to their procedural due process claim, Petitioners have shown they are likely to succeed on the merits.

///

### B.    Irreparable Harm

Petitioners have also established they will suffer irreparable harm in the absence of a TRO.  The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration detention," including "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to [family.]"  *Hernandez*, 872 F.3d at 995.  Such harm is present here.  Without relief, Petitioners face the prospect of significant additional time in detention and continued harm while they await decisions on their asylum applications.  Petitioners report experiencing lack of sleep and significant mental health issues including sadness, anxiety, irritability, hopelessness, constant worry, and loss of appetite.  (ECF Nos. 5-3; 5-4.)  They are also unable to financially support themselves and their families resulting in economic harm.  (ECF No. 5-1 at 9.)  Moreover, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  Thus, Petitioners have sufficiently established irreparable harm.

### C.    Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge."  *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)).  The Court finds these factors also favor Petitioners.  First, the balance of equities tips decidedly in Petitioners' favor as the Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations."  *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).  Second, "it is always in the public interest to prevent the violation of a party's constitutional rights."  *Melendres*, 695 F.3d at 1002.  Moreover, "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering."  *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (internal citation omitted).

Any burden imposed by requiring Respondents to release Petitioners from unlawful

custody and refrain from re-detention unless and until they comply with constitutionally required process is both *de minimis* and clearly outweighed by the substantial harm Petitioners will suffer if they continue to be detained.  In sum, these last two factors weigh in Petitioners' favor.

Therefore, the Court GRANTS Petitioners' request for a TRO and orders Petitioners' immediate release on the same terms as they were released prior to their current detention.  *See Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the pending controversy.").

### IV.    CONCLUSION

Accordingly, IT IS HEREBY ORDERED:

1. Petitioners' Motion for Temporary Restraining Order (ECF No. 5) is GRANTED.

2. Respondents must IMMEDIATELY RELEASE Petitioners Mohit M. and Himanshu H. from custody under the same conditions they were released prior to their current detention.  Respondents shall not impose any additional restrictions on them, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.

3. Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioners absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of the Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that the Petitioner poses a danger to the community or a flight risk.  At any such hearing, the Petitioner shall be allowed to have counsel present.

4. Respondents are ORDERED TO SHOW CAUSE why this Court should not issue a preliminary injunction continuing this Order.  Respondents shall file responsive papers by **January 23, 2026**.  Petitioner may file a reply, if any, by **January 28, 2026**.  **The parties shall indicate in their briefing whether they waive a hearing**.  Fed. R. Civ. P. 65(b)(3).  The Court will consider any stipulation and proposed order filed by the parties if they agree to a less demanding briefing schedule.

5. Petitioners are ORDERED to immediately serve this Order on Respondents, including a

10

copy via email to: usacae.ecf2241-imm@usdoj.gov.

6. Respondents are hereby notified of their right to apply to the Court for modification or dissolution of the TRO on two days' notice to Petitioners.  Fed. R. Civ. P. 65(b)(4).

7. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.  Courts regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).

8. The Clerk of Court is DIRECTED to update the docket to only list Petitioners' first names and last initials.

IT IS SO ORDERED.

Date: January 16, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE